**Electronically Filed
Intermediate Court of Appeals
29570
21-FEB-2013
09:54 AM**

NO. 29570


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


GAIL MARTIN, Plaintiff-Appellant/Cross-Appellee, v.
C. BREWER AND COMPANY, LTD., a Hawaii corporation; MAUNA KEA
AGRIBUSINESS CO., INC., a Hawaii corporation, and Lawrence Patao,
Defendants-Appellees/Cross-Appellants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 03-1-186)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

In this case arising out of a December 18, 2001 motor vehicle accident, Plaintiff-Appellant/Cross-Appellee Gail Martin (Martin) appeals from the "Amended Judgment as to All Claims and All Parties," entered on December 9, 2008, by the Circuit Court of the Third Circuit (Circuit Court).[1] Defendants-Appellees/Cross-Appellants C. Brewer and Company, Ltd. (C. Brewer), Mauna Kea Agribusiness Co., Inc. (Mauna Kea), and Lawrence Patao (Patao)[2] (collectively, Defendants) cross-appeal from seventeen orders entered by the Circuit Court.

---

[1] The Honorable Glenn S. Hara presided.

[2] It appears that despite the spelling appearing in the caption, the correct spelling of Patao's first name is Lawrence.

Martin alleges the Circuit Court erred by: (1) denying Plaintiff's Motion for a New Trial, or in the Alternative for Additur, on the basis that the jury's verdict was irreconcilably inconsistent and against the great weight of the evidence; (2) denying Plaintiff's Motion to Strike Defendants' Untimely Supplement to Defendants' Answers to Interrogatories and to Limit Testimony of Defendants' Witnesses, Including But Not Limited to, Calvin Kam, M.D. (Dr. Kam), to Facts, Opinions and Bases of Opinions Disclosed Prior to the July 23, 2007 Discovery Cut-off Date (Motion to Strike); (3) abusing its discretion in admitting Patao's testimony via deposition; (4) imposing time limits on Martin's direct and cross-examination; (5) excluding Martin's Exhibit 1040, a redacted copy of Patao's answers to interrogatories; (6) refusing three jury instructions requested by Martin; (7) excluding evidence pertaining to the inside of the truck Patao was driving; (8) granting judgment as a matter of law to C. Brewer on the issue of negligent hiring, retention, and training; and (9) abusing its discretion in refusing to grant a new trial where the jury's apportionment of fifty-percent negligence to Martin was against the great weight of the evidence.

Defendants allege eighteen points of error in their cross-appeal, primarily regarding evidentiary rulings, but state that consideration is necessary only if this court vacates judgment and orders a new trial. In essence, these points contend the court erred by: (1) denying Defendants' motions to add expert witnesses; (2) not compelling Martin to submit to a second independent medical examination; (3) granting Martin's motion to preclude evidence of settlement discussions; (4) denying a motion to determine admissibility of Dr. Grover's testimony; (5) admitting Dr. Grover's testimony on billing charges prior to the subject accident and on the reasonableness of medical charges by other doctors; (6) admitting evidence regarding obstruction to Patao's vision inside his truck; (7) admitting Hayes's expert opinion testimony; (8) denying

Defendant's motion to exclude evidence and testimony regarding Martin's claims for negligent hiring, supervision, training and retention and the company Defendants' driver safety program; (9) admitting Dr. Olsen's testimony regarding causation, apportionment, and reasonableness of medical expenses; and (10) admitting Dr. Klein's opinions regarding apportionment.

After carefully reviewing Martin's points of error, the arguments of the parties, the record, and the relevant authority, we conclude Martin's points are without merit and affirm the judgment. Consequently, we do not consider the issues raised in Defendants' cross-appeal.

(1) Martin's primary argument on appeal is that the Circuit Court erred in denying her Motion for New Trial, in which Martin maintained, *inter alia*, that the jury's award of special damages but zero general damages was irreconcilably inconsistent. Relying on Walsh v. Chan, 80 Hawai'i 188, 907 P.2d 774 (App. 1995), rev'd in part on other grounds 80 Hawai'i 212, 908 P.2d 1198 (1995), Martin contends that where the jury has made some award of medical expenses, it must also award some general damages for pain and suffering. Defendants, relying on Dunbar v. Thompson, 79 Hawai'i 306, 312, 901 P.2d 1285, 1291 (App. 1995), maintain that "the denial of general damages does not automatically warrant a new trial." In light of the Hawai'i Supreme Court's decision in Kanahele v. Han, 125 Hawai'i 446, 460, 263 P.3d 726, 740 (2011) in which the court rejected a zero-general-damages award but emphasized that there are some instances where "[a] zero award of general damages may be allowed to stand[] despite an award of special damages," we invited the parties to submit supplemental briefs on this subject. Based on our review of their submissions and the record, we conclude this case is such an instance.

"A verdict [of some special damages but zero general damages] is characterized as inconsistent where there is sufficient evidence to support an award for pain and suffering." Walsh, 80 Hawai'i at 194, 907 P.2d at 780. Here, the evidence of

3

any pain and suffering comes almost exclusively from Martin's testimony. While prior cases relied on objective testimony, there is no authority that "sufficient evidence of pain and suffering" could not be based on the plaintiff's testimony. Additionally, the jurors here were instructed that "[p]ain is subjective and medical science may or may not be able to determine whether pain actually exists[,]" and they must decide whether pain existed "considering all of the evidence," which includes Martin's testimony.

Prior cases have shown that the evidence supporting special damages may be deemed sufficient evidence of pain "since both special damages for medical expenses and general damages for pain and suffering are largely dependent on the same proof." Dunbar, 79 Hawai'i at 315, 901 P.2d at 1294. The appellate courts have parsed the special damages award to determine for which charges the jury made the award and concluded that the award was meant to include at least some medical expenses. See Walsh, 80 Hawai'i at 195, 907 P.2d at 781 (jury award was consistent with the value of medical care attributable to "sprain injuries," including physical therapy, diagnostic tests and x-rays, and pain medication); Kanahele, 125 Hawai'i at 450-51, 263 P.3d at 730-31 (jury award covered medical costs, including doctor's surgical services). But see Dunbar, 79 Hawai'i at 312, 901 P.3d at 1291 (unclear what special damages were to encompass, but likely included medical expenses).

Parsing the damage award here, we conclude, as Defendants have asserted and Martin does not dispute, that the special damages award was intended to compensate Martin for her emergency room (ER) care[3] and car repairs.[4] Defendants characterize the medical costs compensated for by the verdict as "a precautionary medical examination[,]" not addressing the fact

---

[3] The bill for the emergency room care, from Hilo Medical Center was $1,112.50 for the hospital and $537.47 for Dr. Goldberg's services.

[4] Lenn Miyao, owner of Hawaii Collision Center, estimated that the total damage to Plaintiff's car was $2,757.58.

that among the emergency room expenses is a shot of Dilaudid, a pain killer. Here, the ER expenses were not just for a "precautionary" exam, as Defendants state, but included pain medication.[5] Given that "there is sufficient evidence to support an award for pain and suffering," the lack of a general damages award to compensate for that is inconsistent with the jury's special damages award for medical expense.

Nevertheless, the Circuit Court was not required to invalidate the jury's decision and grant a new trial, because "[a] conflict in the jury's answers to questions in a special verdict will warrant a new trial only if those answers are irreconcilably inconsistent, and the verdict will not be disturbed if the answers can be reconciled under any theory." Carr v. Strode, 79 Hawai'i 475, 489, 904 P.2d 489, 503 (1995) (citing Craft v. Peebles, 78 Hawai'i 287, 307, 893 P.2d 138, 158 (1995)) (emphasis added). "[T]he court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to dismiss the jury's verdict and remand the case for a new trial." Id. (quoting Toner v. Lederle Labs., 828 F.2d 510, 512 (9th Cir. 1987)). Thus, the question becomes whether there are any grounds upon which the damages verdict could be reconciled.

In Kanahele, the Hawai'i Supreme Court clearly adopted the three exceptions cited by the Dunbar court, holding:

> A zero award of general damages may be allowed to stand, despite an award of special damages, when the evidence indicated a dispute over the amount of claimed special damages such that the zero-general-damages verdict is evidence of the jury's intent to include in the special damages award an amount for pain and suffering, or there is no probative evidence that the plaintiff incurred pain and suffering as a consequence of the defendant's act, or where the only evidence of pain and suffering is the plaintiff's subjective testimony, which the jury could reasonably have concluded was exaggerated or lacking in credibility.

---

[5] Martin told the ER physicians that she had been using OxyContin and other narcotic pain relievers for almost a decade prior to the accident, so the jury might have inferred that this shot was given to replace pain medications that Martin would have taken anyway, had she not been in the ER. However, Dr. Greenberg's testimony does not establish the reasoning behind administering the medication to Martin.

125 Hawai'i at 460, 263 P.3d at 740 (citing <u>Dunbar</u>, 79 Hawai'i at 316, 901 P.2d at 1295) (brackets and quotations omitted). However, as in <u>Dunbar</u>,[6] the Hawai'i Supreme Court held that Kanahele's circumstances did not fall into one of these exceptions. <u>Id</u>.

The question presented by this case is whether Martin's case falls within one of the recognized exceptions. Based on the record, we conclude Martin's case falls into the third exception. As noted above, there is some evidence--Martin's testimony and that of the treating ER doctor and the emergency medical technician--that Martin was in pain after the accident, which the jury's verdict establishes was partially caused by Defendants' negligence and was "a legal cause of injury" to Martin. Given, however, that the sole evidence of pain and suffering is Martin's testimony and the testimony of the medical providers based on Martin's complaints to them, the jury could have reasonably concluded Martin's complaints were exaggerated or lacked credibility. Furthermore, jurors might have concluded that Martin was malingering when the defense introduced videos documenting Martin's range of motion compared with her and her daughter's testimony on Martin's physical limitations.[7] Dr. Kam also testified that Martin has been dependent on pain medication since the mid-1990s, and was "on serious drugs," including various forms of oxycodone, in October 2001, a couple of months

---

[6]    The ICA in <u>Walsh</u>, decided in the same year, made no mention of these exceptions.

[7]    Martin claimed that in the days soon after the December 18, 2001 accident, she was running into walls, was dizzy and nauseous, and would get car-sick when driving, that she could hardly sleep, that her hands were numb, and that she had headaches. Martin's daughter, Jamie Holland-Brown, said that following the subject accident her mom "couldn't lift her head off the pillow," "was in pain all the time," had a constant headache, and "pretty much locked herself in her room."

In contrast, Defendants introduced into evidence two surveillance videos taken by their hired private investigator, which showed Martin on May 14, 2002, walking down stairs and driving, and on September 29, 2005 carrying a box into the post office and driving a vehicle.

prior to the subject accident. Based on this record, it is reasonable to conclude that the jury found Martin's complaints of pain resulting from the accident to be not credible.

Martin apparently concedes that none of the special damages awarded were to compensate her for the 2002 surgeries, massage therapy, chiropractic care or dental treatments. However, she argues that even assuming that the damages were for the ER costs alone, general damages were still warranted because she suffered mental and emotional distress caused because she feared "possible aggravation" of pre-existing injuries. This argument is dependent upon the jury deeming Martin's testimony credible. The jury could have concluded that Martin's testimony regarding her mental distress suffered while in the ER was not credible, and thus not a basis for a general damages award.

The jury's answers to questions posed in a special verdict form "are to be construed in the context of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." Dunbar, 79 Hawai'i at 312, 901 P.2d at 1291 (internal quotation marks and citation omitted). In view of the evidence produced at trial, the jury's verdict is not irreconcilably inconsistent and falls into the third exception to the general rule given in Kanahele.

(2) We reject Martin's second point of error,[8] that the Circuit Court abused its discretion in denying her Motion to Strike.[9] The Motion to Strike asserted that Defendants had sent

---

[8] Martin violates Hawai'i Rules of Appellate Procedure (HRAP) 28(b)(4) because the points of error section of her Opening Brief does not cite "where in the record the alleged error occurred." The HRAP requires parties to cite to the record in the points on appeal section of the Opening Brief and warns that "[p]oints not presented in accordance with this section will be disregarded," HRAP 28(b)(4). However, Martin's statement of the case does reference the Circuit Court's order denying the motion. Given the appellate courts' preference for adjudicating cases on the merits when possible, Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012), we address this point.

[9] The Circuit Court's Order re: January 11, 2008 Status Conference (Seventh Trial Readiness Order) contains the Circuit Court's decision on Martin's motion. Relevant to this appeal, the Circuit Court ordered that:
(continued...)

unsigned supplemental responses to interrogatories with a letter dated December 18, 2007--after the discovery cut-off date--and included a letter from Dr. Kam, purporting to supplement his October 29, 2001 report on an independent medical examination done for litigation over Martin's 2000 accident.  We conclude the Circuit Court did not abuse its discretion here.

Martin's Motion to Strike was based on Rules 37 and 11 of the Hawai'i Rules of Civil Procedure (HRCP) and thus sought sanctions based on these rules.  The Circuit Court had discretion in determining whether to impose sanctions.  See Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 241, 948 P.2d 1055, 1082 (1997) (circuit court has broad discretion in determining sanctions under HRCP Rule 37); Gap v. Puna Geothermal Venture, 106 Hawai'i 325, 331, 104 P.3d 912, 918 (2004) ("All aspects of a HRCP Rule 11 determination should be reviewed under the abuse of discretion standard." (internal quotation marks omitted)). "[T]rial courts have broad powers to control the litigation process before them, including the presentation of evidence." Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 75, 229 P.3d 1133, 1140 (2010) (citing Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994)).

First, as required under HRCP Rule 37, Martin fails to identify any discovery order which her motion to strike was designed to enforce.  Martin does not point to any court order requiring expert reports to be provided by a certain date.  To the extent Martin may be relying on the "Court Order Re: November 9, 2007 Trial Readiness Conference (Third Trial Readiness Order)" dated November 21, 2007, that order did not prohibit Defendants from *providing* additional information to

---

[9](...continued)
> [Dr. Kam] will be allowed to testify as to opinions rendered in October, 2002 and December, 2007, provided that his testimony is limited to data that was in existence on or before the end of August, 2002.  [Defendants' counsel] is to make Dr. Kam available for deposition at [Martin's counsel's] convenience.

Martin, by supplementing Dr. Kam's earlier answers to Martin's interrogatories. Although Martin claims on appeal that the December 18, 2007 letter was the first time that Defendants had disclosed Dr. Kam's opinions relating to causation and apportionment, on November 8, 2004, Defendants' Final Naming of Witnesses listed Dr. Kam as an expert "[e]xpected to testify regarding his review of records and opinions regarding damages issues, including apportionment." (emphasis added) At the time of the Motion to Strike, Martin had Dr. Kam's October 29, 2001 report,[10] but had not, at least up until November 8, 2007, deposed Dr. Kam.

Second, in response to Martin's Motion to Strike, the Circuit Court limited the scope of Dr. Kam's testimony and gave Martin the opportunity to depose Dr. Kam at her convenience. Martin deposed Dr. Kam on January 14, 2008. Given the circumstances in this case, the Circuit Court acted within its discretion and Martin was not unduly prejudiced by the Circuit Court's order.

Further, Martin has made no showing that sanctions were appropriate under HRCP Rule 11.

Martin has failed to show the Circuit Court abused its discretion in denying her Motion to Strike.

(3) The Circuit Court did not err in allowing Defendants to submit a deposition from Patao in lieu of his testimony. HRCP Rule 32 allows a deposition to be used at trial, to the extent that the testimony would be admissible in evidence if the witness were present and testifying, if the court finds the witness is unable to attend or testify due to illness. HRCP Rule 32(a)(3)(c).[11] The Circuit Court was not bound by the rules

---

[10]     Martin asserts that the Circuit Court "erroneously references" Dr. Kam's opinions rendered in October 2002. We agree that October 2002 is inaccurate, but likely a typographical error.

[11]     HRCP Rule 32(a)(3) reads, in relevant part:

(continued...)

9

of evidence in considering the information Defendants presented to make its decision. HRE Rule 104(a) provides, "In making its determination [of preliminary questions] the court is not bound by the rules of evidence except those with respect to privileges." See also HRE 1101(d)(1) (the rules of evidence do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104"). Dr. Roy Koga's (Dr. Koga) statements speak to Patao's unavailability to testify due to illness, a fact concerning the admissibility of the deposition under HRCP Rule 32(a)(3)(C). Thus, the Circuit Court was not bound by the personal knowledge requirement of HRE Rule 602, and Dr. Koga's lack of personal knowledge did not warrant exclusion of the deposition.

"On appeal, the trial court's determination of preliminary factual issues concerning the admission of evidence will be upheld unless clearly erroneous." State v. McGriff, 76 Hawaiʻi 148, 157, 871 P.2d 782, 791 (1994). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Id. (quoting Hawaiʻi's Thousand Friends v. City & Cnty. of Honolulu, 75 Haw. 237, 248, 858 P.2d 726, 732 (1993) (internal quotation marks and brackets omitted)). Defense counsel's representations and Dr. Koga's testimony provided evidence of Patao's poor health. The Circuit Court could infer that, where Patao was hospitalized nine days earlier with a condition that requires two or three weeks of recuperation, Patao

---

(...continued)
> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment[.]

The rule is nearly identical to Rule 32(a)(4)(C) of the Federal Rules of Civil Procedure (FRCP).

would be too ill to testify. Accordingly, Defendants met their burden of proving Patao's inability to testify.

Martin further contends that the Circuit Court failed to make arrangements for Patao to testify in person, either the next day or the week following. However, as she did not request a continuance of the trial in order to obtain Patao's live testimony, this issue is deemed waived. See Enoka v. AIG Hawaii Ins. Co., Inc., 109 Hawai'i 537, 546, 128 P.3d 850, 859 (2006).

(4) The Circuit Court did not abuse its discretion by imposing time limits on the presentation of evidence and cross-examination of Defendants' witnesses. A review of the record shows that, although Martin may have noted that she did not like the time constraints, she never objected nor requested more time to extend cross-examination. Accordingly, this point of error is deemed waived given that "the rule in this jurisdiction prohibits an appellant from complaining for the first time on appeal of error to which he has acquiesced or to which he failed to object." Price v. AIG Hawai'i Ins. Co., Inc., 107 Hawai'i 106, 111, 111 P.3d 1, 6 (2005) (quoting Okuhara v. Broida, 51 Haw. 253, 255, 456 P.2d 228, 230 (1969)) (internal quotation marks and alterations omitted). "[I]f counsel believe that relevant evidence must be heard after the time set for the hearing has expired, they must move for an extension of time." Doe v. Doe, 98 Hawai'i 144, 154, 44 P.3d 1085, 1095 (2002). Where the parties make no objection, "there cannot be error, absent plain error." Id. The appellate court's discretion to address the plain error doctrine should be exercised sparingly and "only when justice so requires." Okada Trucking Co., Ltd., v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) (citation and internal quotation marks omitted).

Use of such discretion in this instance would be misplaced as the Circuit Court did not clearly err in limiting testimony. Martin's counsel asked Dr. Robert Marvit (Dr. Marvit), the psychiatrist, about the Mauro report and Dr. Marvit stated that he did not find Dr. Anthony Mauro's (Dr. Mauro)

conclusions to be correct. Martin provides no affidavit that establishes what the other defense experts would have testified to regarding Dr. Mauro's report if questioning had continued. Accordingly, the Circuit Court's limitation on testimony was not an abuse of discretion. Accord Walton v. Cannon, Short & Gaston, 23 S.W.3d 143, 154 (Tex. Ct. App. 2000) (cited in Barbee v. Queen's Medical Center, 119 Hawai'i 136, 155, 194 P.3d 1098, 1117 (App. 2008)) (no abuse of discretion where party did not object to limitation and did not proffer evidence he was allegedly prevented from introducing).

(5)    The Circuit Court did not err when it denied admission of Martin's proposed exhibit 1040 based on HRCP Rule 33(b)(1).[12]  The refused Exhibit 1040 does not appear in the record.  Consequently, Martin has failed to comply with HRAP Rule 28(b)(4)(A), which requires that when an appellant raises a point of error involving the admission or rejection of evidence, the point of error should include "a quotation of the ground urged for the objection and the full substance of the evidence admitted or rejected."  Moreover, the admission of Martin's attorney that the proposed exhibit "doesn't have a signature on it" but "does have the fax line for Ayabe, Chong, Nishimoto, the firm representing [Patao]"  shows that the interrogatories were not "given fully in writing under oath" as required by HRCP Rule 33.

(6)    Martin claims she was prejudiced by the Circuit Court's refusal to issue three jury instructions that she requested.  "It is prejudicial error for the court to refuse to give an instruction relevant under the evidence which correctly states the law unless the point is adequately and fully covered by other instructions given by the court."  In re Estate of

---

[12]      HRCP Rule 33(b)(1) states, in pertinent part, that

[e]ach interrogatory shall be answered separately and fully
in writing under oath, unless it is objected to, in which
event the objecting party shall state the reasons for
objection and shall answer to the extent the interrogatory
is not objectionable.

Herbert, 90 Hawai'i 443, 467, 979 P.2d 39, 63 (1999) (citation and internal quotation marks omitted). "Whether a jury instruction properly states the law is a question that this court will review *de novo*." Richardson, 76 Hawai'i at 504, 880 P.2d at 179 (citing S. Utsunomiya Enter., Inc. v. Moomuku Country Club, 75 Haw. 480, 506, 866 P.2d 951, 965 (1994)).

(a)  The Circuit Court did not err in refusing to instruct the jury that Defendants were liable for subsequent "inappropriate and/or improper medical treatment." Martin's proposed instruction does not accurately state the rule for a defendant's liability for subsequent medical negligence. "Inappropriate and/or improper medical care" could include treatment that is necessary to treat an injury but which is done negligently, but it could also include treatment that was not reasonable or was unnecessary to treat an injury. Under Montalvo v. Lapez, 77 Hawai'i 282, 884 P.2d 345 (1994), negligent defendants may be liable for the former but not the latter.

(b)  As Martin's "notice to agent" instruction was irrelevant to the issues at trial, the Circuit Court did not err in refusing this instruction. Martin argued below that the instruction was necessary because Patao testified that "he had noticed that the gauges had blocked his view from the pickup truck sometimes [sic] prior to the date of this accident. . . . Under this [proposed instruction,] notice to agent is notice to the principal, because he is the agent of the company for driving that truck." We fail to see how the instruction was relevant, given that Mauna Kea would be liable under the doctrine of *respondeat superior* if the jury found Patao to be negligent. Martin makes no argument on appeal that the absence of the instruction left the instructions given to the jury prejudicially insufficient.

(c)  It was not error for the Circuit Court to refuse Martin's requested instruction no. 6, which purports to instruct the jury on the "eggshell skull doctrine," as its substance was covered by other instructions. Moreover, Martin's

instruction does not properly state the law on apportioning for pre-existing injuries. Martin's proposed instruction would have made Defendants liable for aggravation of her pre-existing condition, without apportioning the damages attributable to that condition. Montalvo, 77 Hawai'i at 299-300, 884 P.2d at 362-63.

(7) The Circuit Court did not abuse its discretion in excluding photographs showing the inside cab of the pesticide spray truck driven by Patao.[13] A trial court's exclusion of photographs is proper where the photographs were not a fair and accurate representation of the scene at the time of alleged events. State v. Sequin, 73 Haw. 331, 337-38, 832 P.2d 269, 273 (1992) (excluding aerial photos of crime scene taken after crime). Martin's counsel did not establish that the photographs accurately depicted the vehicle at the time of the accident. As the proponent of the photographs' admission, it was Martin's duty to lay the foundational facts necessary to authenticate them. State v. Joseph, 77 Hawai'i 235, 239, 883 P.2d 657, 661 (App. 1994) ("[T]he proponent of the evidence must prove that the item is what the proponent claims it is.").

(8) The Circuit Court did not err in granting a judgment as a matter of law in favor of C. Brewer. The Circuit Court granted Defendants' motion on the basis that Martin alleged C. Brewer was liable only on the basis of *respondeat superior*, and "there's no indication of a master/servant relationship between Mr. Patao and C. Brewer[.]" Martin presents no argument on this point, and thus this point is deemed waived.

(9) The Circuit Court did not err in denying Martin's motion for a new trial. Where, as here, the basis for the motion is that the verdict is against the weight of the evidence, "the

---

[13] Again, it should be noted that Martin did not adhere to HRAP requirements. HRAP 28(b)(4)(iii)(A) requires that when a point of error "involves the admission or rejection of evidence, a quotation of the grounds urged for the objection and the full substance of the evidence admitted or rejected." Plaintiff appended her Opening Brief with three transcripts related to this point of error, but does not provide accurate page numbers to the grounds urged for rejection of the photographs.

trial court no longer possess[es] unbridled discretion in the disposition of the motion." Lovell Enter., Inc. v. Campbell-Burns Wood Prods., Inc., 3 Haw. App. 531, 541, 654 P.2d 1361, 1368 (1982). "[A trial court's] conclusion that a verdict is not against the weight of the evidence is sustained unless we are of the opinion that the undisputed evidence results in a verdict that is without legal support such that justice requires a new trial[.]" Miyamoto v. Lum, 104 Hawai'i 1, 11, 84 P.3d 509, 519 (2004) (citation and internal quotation marks omitted).

Substantial evidence supports the jury's conclusion that the accident was partially due to Martin's negligence. Patao testified that Martin stopped twice at the intersection, the second time being after she was five or six feet into the intersection, "on the bend already on the turn." Martin claims that she had pulled forward just enough to see around a vehicle on the left, not into the intersection. Bernard Maddox, Defendants' accident reconstructionist, could not rule out the possibility that Martin braked suddenly in an attempt to cause the accident. Because the vehicles were moved from the roadway before the police arrived, there is no independent evidence or witnesses to indicate where precisely the accident occurred. Patao's version supports the theory that Martin was negligent in stopping abruptly in the intersection. It was up to the jurors to decide how the accident occurred based upon the credibility of the witnesses. Their conclusion that Martin's negligence was fifty percent of the cause of the accident is not "without legal support such that justice requires a new trial[.]" Miyamoto, 104 Hawai'i at 11, 84 P.3d at 519 (citation and internal quotation marks omitted).

Therefore, the Circuit Court of the Third Circuit's December 9, 2008 "Amended Judgment as to All Claims and All

Parties," entering the jury verdict in favor of Martin for $4,430 and against Defendants, is affirmed.

DATED: Honolulu, Hawai'i, February 21, 2013.

On the briefs:

Mark K. Haugen,
for Plaintiff-Appellant/Cross-
Appellee.

Presiding Judge

Stephen G. Dyer
Gary S. Miyamoto
(Ayabe Chong, Nishimoto, Sia &
Nakamura),
for Defendants-Appellees/Cross
Appellants.

Associate Judge


Associate Judge